**Richard MATHIS, Appellant,**

v.

**STATE of Florida, Appellee.**

No. 1D14–2695.

District Court of Appeal of Florida, First District.

Nov. 14, 2016.

Michael J. Titus, Assistant Conflict Counsel, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee.

WINSOR, J.

When Richard Mathis went to trial on charges of child sexual abuse, his defense attorney faced a daunting challenge. Mathis faced charges of (1) sexual battery on a child under twelve—"commonly known as capital sexual battery," *Roughton v. State*, 185 So.3d 1207, 1208 (Fla. 2016); (2) unlawful sexual activity with a child between twelve and sixteen; and (3) unlawful sexual activity with a child aged sixteen or seventeen. All three counts related to the same victim—Mathis's niece—but each covered a different time period. The latter two were second-degree felonies, but the first charge was the most serious: a conviction for capital sexual battery carries a mandatory life sentence. §§ 794.011(2)(a), 775.082(1), Fla. Stat. (2000).

At trial, the niece testified that Mathis assaulted her when she was nine years old. He removed her from the room where she slept, warning he would kill her if she told. And he raped her.

That was the first time. The niece testified that "[i]t happened a lot, plenty of times," but for years, she was too afraid to tell. Mathis raped her when she was twelve. He raped her again (this time on a school bus) when she was still under sixteen. He raped her again (this time with a gun in hand) when she was seventeen. One of the rapes left the underage niece pregnant with her uncle's child. (DNA tests confirmed paternity.)

After hearing all the evidence, the jury convicted Mathis on all three counts. The court sentenced him to the mandatory minimum of life for the capital sexual battery, fifteen years for the other counts. This is Mathis's direct appeal.

Mathis does not challenge his conviction for capital sexual battery, nor does he challenge the resulting life sentence. His sole argument here is that we should reverse his other two convictions based on ineffective assistance of counsel. According to Mathis, any reasonably effective attorney would have moved to dismiss those two charges based on the statute of limitations. The State argues that there was no viable statute-of-limitations defense and that, even if there were, the particular circumstances of this case do not warrant reversal. We do not address the viability of the defense because we conclude that, even if the defense was available, Mathis cannot succeed in this direct appeal. Mathis's claim of ineffective assistance of counsel is left for a rule 3.850 proceeding.[1]

"With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal." *Ellerbee v. State*, 87 So.3d 730, 739 (Fla.2012). To meet the rare exception, a defendant must demonstrate not only ineffectiveness on the face of the record and indisputable prejudice, but also "an inconceivable tactical explanation for the conduct." *Morales v. State*, 170 So.3d 63, 67 (Fla. 1st DCA 2015). Here, assuming there was a statute-of-limitations defense as to the lesser counts, it is conceivable that a reasonable attorney might strategically abandon it.

From the beginning, a reasonable attorney would have understood that if convicted of capital sexual battery, Mathis would face a mandatory life sentence. A reason-

---

1. If necessary to resolve any subsequent rule 3.850 petition, the trial court can determine in the first instance whether the defense was viable.

able attorney also would have understood that Mathis could not credibly argue he never had illegal sexual contact with the victim; it was essentially undisputed that Mathis impregnated the girl when she was underage. A reasonable attorney would have understood that Mathis therefore would have been left to argue that, yes, he had sex with a child, but that the child was at least twelve years old.[2]

In light of all this, a reasonable attorney might have sought to avoid giving the jury only two choices—capital sexual battery and acquittal. Counsel might have strategically determined that Mathis could fare better if the jury had a third option— convicting him of a sex crime that would not result in a mandatory life sentence. Cf. Spaziano v. Florida, 468 U.S. 447, 455, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (noting that an "all-or-nothing choice" may "increase[ ] the risk that the jury will convict . . . to avoid setting the defendant free"), overruled on other grounds by Hurst v. Florida, —— U.S. ——, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). In some circumstances, waiving a defense is a good defense. Cf. Flowers v. State, 149 So.3d 1206, 1208 (Fla. 1st DCA 2014) (affirming conviction and noting that counsel admitted his trial strategy was to have the jury instructed on a time-barred, less serious offense); Dixon v. State, 53 So.3d 1242, 1242 (Fla. 2d DCA 2011) (affirming despite clear statute-of-limitations defense because waiver might have been tactical); Morris v. State, 909 So.2d 428, 431–34 (Fla. 5th DCA 2005) (affirming denial of motion to withdraw plea because of possible strategic reasons for counsel's waiving statute-of-

limitations defense to avoid harsher sentence).

 In this case, it is at least conceivable that Mathis's attorney strategically chose risking convictions on the lesser counts (notwithstanding any viable defense) to increase the chances of an acquittal on the most serious charge. Mathis stood comparatively less to lose with convictions on counts two or three, and perhaps much to gain. Under these circumstances, Mathis has not satisfied the heavy burden he faced in this direct appeal.

AFFIRMED.

ROBERTS, C.J., concurs; LEWIS, J., concurs in result with opinion.

LEWIS, J., concurring in result.

Although I concur in the majority's affirmance in this case, I write to express my agreement with Appellant's argument that the State charged him with lewd or lascivious battery and unlawful sexual activity with a minor outside the applicable statute of limitations period.

According to a Gretna Public Safety Department Offense Event Report, which was for "Sexual Battery," law enforcement was contacted on January 18, 2008, by the Florida Department of Children and Family Services about the victim, who was born on December 5, 1990, and was "seventeen years of age [and] pregnant and there were three possible fathers," one of whom was Appellant. The report noted that all possible fathers were over the age of twenty-four and that a child protection team interview was conducted with the victim on February 4, 2008, during which she identi-

---

2. That was essentially Mathis's argument at trial. His attorney told the jury that the victim got pregnant and that "presumptively based on the evidence that you have heard and listened to[,] Mr. Mathis is the father." He later argued that "I think that the State

has likely met its burden as relates to Count 3," the count that corresponded to the time Mathis impregnated the victim. Mathis has not challenged his counsel's strategy in making these arguments.

fied Appellant, her uncle, as the father of her unborn child, and alleged that he "has been having sexual intercourse with her since she was nine years old until the last time being November 26th 2007 when she ... was sixteen." The report set forth under the date "11/20/2010" the following:

On 03/26/2009, samples of DNA were collected on [the victim] and the [victim's child] to compare with possible fathers. On 10/26/2010 a sample of DNA was collected from [appellant]. Final results were received by Gadsden County.... The results were provided to The Gretna Public Safety Department for review. The results read the following: ... [Appellant] (Father).

On August 1, 2011, the State filed an Information, charging Appellant with "sexual activity with 16 or 17 year old." The State filed an Amended Information on September 14, 2011, adding the charge of sexual battery on a child under twelve years of age by a defendant eighteen years or older. In the Second Amended Information, which was filed on August 13, 2012, the State charged Appellant with sexual battery on a child under twelve years of age by a defendant eighteen years of age or older (Count 1), lewd or lascivious battery (Count 2), and sexual activity with a sixteen- or seventeen-year-old (Count 3). In Count 1, the State alleged that Appellant, between December 5, 1999, and December 4, 2002, did unlawfully commit a sexual battery upon [the victim]...." In Count 2, the State alleged that Appellant "on various dates between December 5, 2002 and November 25, 2007, did unlawfully engage in sexual activity with [the victim] ... by oral[,] anal[,] or vaginal penetration, or union with the sexual organ of another, and the defendant was eighteen years or older, contrary to Section 800.04(4)(a)...." In Count 3, the State alleged that Appellant "[o]n or about November 26, 2007, did unlawfully engage in sexual activity with [the victim] ... a person 16 or 17 years of age, by oral, anal, or vaginal penetration by, or union with, the sexual organ of another, and the defendant was 24 years of age or older, contrary to Section 794.05, Florida Statutes."

During Appellant's trial, trial counsel stated in part, "[T]here's going to be an admission as it relates to Count 3. Straight out of the chute, I will tell the jury that I think there's going to be sufficient evidence for them to likely arrive at a conviction on that count...." Trial counsel continued, "The battle lines, though are from the defense perspective that [the victim's] allegations as relate to Counts 1 and 2 are fiction." Trial counsel later argued, "Not only does she not name [Appellant as the father of her baby]; she suggests other people. And not until the point that she finds out oh, [Appellant] is the father, then all of a sudden the story changes and it becomes I was raped and that's how I got pregnant, and I was previously raped starting back when I was nine years old. There's not a disclosure of any of that stuff initially until she learned that it's [Appellant]." When asked by the trial court if he was satisfied and aware that trial counsel was "planning to do that as part of his trial strategy [concede guilt on Count 3]," Appellant affirmatively responded.

The victim testified that Appellant's sexual abuse began when she was nine years of age and continued through the age of sixteen, and the State presented DNA evidence, showing that Appellant was the father of the victim's child. During his closing argument, trial counsel argued in part, "[The victim] got pregnant.... Not until [she] learned that does any of this historical stuff start to emerge about oh, I was violently raped, I was drug [sic] out of a car, it was at gunpoint, and then back when I was nine all of this other stuff

happened." The jury found Appellant guilty as charged on Counts 1, 2, and 3.

As we have explained, "Claims of ineffective assistance of counsel are rarely addressed on direct appeal because they normally turn on questions of fact and both sides are entitled to present relevant evidence at an evidentiary hearing." *Barnett v. State*, 181 So.3d 534, 536 (Fla. 1st DCA 2015). In order to prevail on an ineffectiveness claim on direct appeal, an appellant must demonstrate " 'ineffectiveness on the face of the record, indisputable prejudice, and an inconceivable tactical explanation for the conduct.' " *Id.* (Citation omitted).

The issue presented in this case, whether trial counsel was ineffective in failing to move to dismiss Counts 2 and 3 on statute of limitations grounds, involves statutory construction, the polestar of which is legislative intent. *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So.3d 1, 8 (Fla.2012). To discern legislative intent, courts must look to the plain and obvious meaning of a statute's text, and if a statute's language is clear and unambiguous and conveys a clear and definite meaning, courts must apply that unequivocal meaning and not resort to the rules of statutory interpretation. *Id.* at 9. If, however, an ambiguity exists, courts should look to the rules of statutory construction to help interpret legislative intent, which may include the examination of a statute's legislative history and the purpose behind the enactment. *Id.*

Section 775.15(2)(a), Florida Statutes (2007), provides that a prosecution for a first-degree felony must be commenced within four years after it is committed. A prosecution for "any other felony" must be commenced within three years after it is committed. § 775.15(2)(b), Fla. Stat. (2007). Appellant was first charged with sexual activity with a sixteen- or seventeen-year-old, a second-degree felony prohibited by section 794.05, on August 1, 2011, more than three years after the incident allegedly occurred on or about November 26, 2007. Appellant was charged with lewd or lascivious battery, a second-degree felony prohibited by section 800.04(4)(a), on August 13, 2012, more than three years after the battery allegedly occurred between December 5, 2002, and November 25, 2007.

Section 775.15(13)(a), Florida Statutes (2007), provides that the applicable statute of limitations does not begin to run "until the victim has reached the age of 18 or the violation is reported to a law enforcement agency or other governmental agency, whichever occurs earlier" for violations of "s. 794.011, former s. 794.05, Florida Statutes 1995 [carnal intercourse with an unmarried person under the age of eighteen], s. 800.04, or s. 826.04." As Appellant contends, this statute could only apply to Count 2, the alleged violation of section 800.04, given that it does not expressly apply to the crime of unlawful sexual activity with a minor, the offense currently prohibited by section 794.05. As for Count 2, the victim, according to the record, disclosed the events leading to the charge of lewd or lascivious battery in February 2008. The victim turned eighteen on December 5, 2008. As stated, the State charged Appellant with Count 2 on August 13, 2012, more than three years after the disclosure date and the victim's eighteenth birthday. Thus, regardless of which event occurred earlier, Count 2 was not timely charged under section 775.15(13)(a).[3]

---

**3.** While trial counsel made statements at trial representing that the victim disclosed the sexual abuse *after* the DNA results were received by the State, even if that were the case, the State did not charge appellant with lewd or lascivious battery within three years of December 5, 2008, the victim's eighteenth birthday.

The State does not argue on appeal that section 775.15(13) is applicable in this case. Instead, the State argues that the statute of limitations did not begin to run until November 20, 2010, the date it represents it received the DNA results establishing that Appellant was the victim's child's father. In support of its assertion, the State relies upon section 775.15(16), Florida Statutes (2007), which provides as follows:

(a) In addition to the time periods prescribed in this section, a prosecution for any of the following offenses may be commenced at any time after the date on which the identity of the accused is established, or should have been established by the exercise of due diligence, through the analysis of deoxyribonucleic acid (DNA) evidence, if a sufficient portion of the evidence collected at the time of the original investigation and tested for DNA is preserved and available for testing by the accused:

1. Aggravated battery or any felony battery offense under chapter 784.

2. Kidnapping under s. 787.01 or false imprisonment under s. 787.02.

3. An offense of sexual battery under chapter 794.

4. A lewd or lascivious offense under s. 800.04 or s. 825.1025.

5. A burglary offense under s. 810.02.

6. A robbery offense under s. 812.13, s. 812.131, or s. 812.135.

7. Carjacking under s. 812.133.

8. Aggravated child abuse under s. 827.03.

(b) This subsection applies to any offense that is not otherwise barred from prosecution on or after July 1, 2006.

I agree with Appellant that section 775.15(16) does not apply to the offense of "sexual activity," and I find no merit in the State's contention that unlawful sexual activity constitutes an "offense of sexual battery under chapter 794" as set forth in section 775.15(16)(a)3. In reaching this conclusion, I am guided by the fact that section 794.005, Florida Statutes (2007), provides that the "Legislature finds that the least serious sexual battery offense, which is provided in s. 794.011(5), was intended, and remains intended, to serve as the basic charge of sexual battery and to be necessarily included in the offenses charged under subsections (3) and (4)...." Section 794.011(5), Florida Statutes (2007), provides that a "person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof does not use physical force and violence likely to cause serious personal injury commits a felony of the second degree...." The Legislature's characterization of section 794.011(5) as the "least serious sexual battery offense" and the fact that section 775.15(16) does not expressly include the offense of unlawful sexual activity with a minor leads me to conclude that the statute of limitations for that offense could not be extended under section 775.15(16).

As for the lewd or lascivious battery charge, a violation of section 800.04 is included within section 775.15(16). However, in my opinion, the statute does not apply to Count 2 in this case. The plain language of section 775.15(16) evidences the Legislature's intent that the extension is to apply in situations where the identity of a perpetrator is unknown or unestablished until a DNA analysis is conducted. *See generally Bryson v. State*, 42 So.3d 852, 853–54 (Fla. 1st DCA 2010) (rejecting the appellant's argument that the legislative extension of the statute of limitations in cases involving identification established through DNA analysis in section 775.15(16) did not apply to his offense of attempted armed robbery, noting that the appellant's DNA matched the DNA left at the crime scene by the masked assailant, and holding

that the plain language of section 775.15(16) provided that the appellant could have been prosecuted at any time after the date when FDLE established a close link between his DNA and the blood sample taken from the crime scene). The pertinent legislative staff analysis supports my reading of the statute's text. It provides in part:

Florida's DNA database, and others throughout the country, provides opportunities for law enforcement agencies to solve crimes where they have physical evidence containing DNA by checking that evidence against information in the database. The practice of some agencies to sift through evidence in 'cold cases'—cases where the investigative leads have long since been exhausted— has resulted in defendants being identified with crimes that were unsolved for many years.

Section 775.15(15), F.S., seeks to address the situation in which the general time limitations for commencing prosecution have expired before the perpetrator is identified. The statute provides that a prosecution for sexual battery and lewd and lascivious offenses may be commenced within 1 year after the date on which the identity of the accused is established, or should have been established by the exercise of due diligence, through the analysis of . . . (DNA) evidence.

This bill provides that a prosecution for any of the below-listed offenses that are not otherwise barred from prosecution on or after July 1, 2006, may be commenced at any time after the date on which the identity of the accused is established . . . through analysis of DNA evidence.

Fla. H.R. Comm. on Crim. Just., HB 7177 (2006) Staff Analysis (Apr. 10, 2006).

Appellant is correct that while the DNA evidence confirming that he fathered the victim's child may have corroborated the victim's allegations of sexual abuse, it did not "establish" his "identity" as the perpetrator of lewd or lascivious battery between December 5, 2002, and November 25, 2007. In *Therlonge v. State*, 184 So.3d 1120, 1120 (Fla. 4th DCA 2015), a case cited by Appellant, the appellant was convicted of lewd and lascivious battery of a person under sixteen years of age. His appeal challenged the trial court's construction of section 775.15(16)(a)4. *Id.* In reversing the conviction, the Fourth District relied upon the fact that "no DNA evidence pertinent to the crime was collected and preserved for later testing during the 'original investigation' within the meaning of the statute." *Id.* As for the underlying facts, the Fourth District explained that police began investigating the appellant, a twenty-nine-year-old, after they were informed in 2008 that a sixteen-year-old gave birth and the appellant's name was on the birth certificate. *Id.* The appellant learned of the investigation and fled the state. *Id.* at 1120–21. Over the course of three years, the case was declared "inactive" at least twice but remained open while officers made intermittent attempts to locate the appellant. *Id.* at 1121. When the appellant was located in 2010, police obtained a DNA sample from him; the results could not exclude him as the father of the child. *Id.* At that point, the police requested an arrest warrant. *Id.* After the three-year statute of limitations period had expired "as over three years had passed since the crime was reported to law enforcement," the State charged the appellant with lewd and lascivious battery. *Id.* Despite the time lapse, the State argued that it was permitted to continue the prosecution under section 775.15(16)(a). *Id.* The appellant moved to dismiss the charge, arguing that the statute could not be applied to his case because the child's DNA was not obtained

during the original investigation. *Id.* The trial court denied the motion, noting that between 2008 and 2010, law enforcement exercised due diligence in trying to find the appellant, and the investigation was ongoing. *Id.* In disagreeing with the trial court, the Fourth District set forth in part:

> We reject the trial court's conclusion that there was an "original, *ongoing* investigation" (emphasis added) sufficient to trigger the extension period of section 775.15(16)(a)4. We acknowledge that this statute was intended to apply where a DNA sample was obtained shortly after the commission of a crime where the identity of the source of the DNA is unknown. Here, Appellant was hardly unknown, as he was named as the child's father on the birth certificate. Nonetheless, our decision is dictated by the plain language of the statute and the fact that no DNA evidence of the crime was collected during the "original investigation" to preserve for comparison against an accused and thus trigger the application of the extension period under section 775.15(16)(a)4. During the period when police first learned of the potential lewd and lascivious behavior until the time the case was initially declared "inactive," the onus was on the police to collect evidence to preserve for a later match—in this case, the DNA of the child. DNA evidence was collected only after Appellant was located by the investigating police department upon being arrested for a different charge, well after the original investigation had first been declared "inactive."

*Id.* at 1121–22.

The Fourth District correctly acknowledged that section 775.15(16) is to apply when a DNA sample is obtained shortly after the commission of a crime where the identity of the source of DNA is unknown. This case was not a situation where the victim disclosed that she was abused by an unknown assailant. While the record does not contain any indication that the investigation was declared inactive as was the case in *Therlonge*, the samples of the victim's DNA and the DNA of her child were not taken, according to the record, until March 26, 2009, and Appellant's DNA sample was not taken until October 26, 2010, more than two years after the victim's pregnancy was discovered and after her child was born. Nevertheless, even if it were said that the DNA samples were taken as part of the "original investigation," I would still find the statute of limitations exception provided for in section 775.15(16) inapplicable to the lewd or lascivious battery offense for the reasons expressed herein.[4]

Based upon the foregoing analysis, both Counts 2 and 3 were charged outside of the applicable statute of limitations period. However, I am unable to say that no tactical reason for failing to move to dismiss these two counts can be discerned from the record. *See Dixon v. State*, 53 So.3d 1242, 1242–43 (Fla. 2d DCA 2011) (noting that the appellant appealed his sentences for felon in possession of a firearm and sexual battery without violence, affirming "with some hesitation because it is clear that the statute of limitations had expired for the offense of sexual battery before this prosecution was commenced," and explaining that it could not tell from the record whether there was a tactical reason

---

4. My analysis as to the applicability of section 775.15(16) would apply equally to the applicability of the statute of limitations extension provided for in section 775.15(15), which applies to "[a]n offense of sexual battery under chapter 794" and "[a] lewd or lascivious offense under s. 800.04 or s. 825.1025" that "is not otherwise barred from prosecution between July 1, 2004, and June 30, 2006."

not to raise the defense where the appellant entered into a negotiated plea). I, therefore, concur in the affirmance of Appellant's judgment and sentences on Counts 2 and 3 without prejudice to Appellant's right to raise his claims in a proper motion for postconviction relief. *See, e.g., Gavilla v. State,* 178 So.3d 965, 965 (Fla. 4th DCA 2015) (concluding that ineffectiveness of the appellant's counsel was not established on the face of the record and affirming the appellant's conviction and sentence without prejudice to the appellant raising his claim of ineffectiveness pursuant to rule 3.850); *Adderly v. State,* 132 So.3d 1234, 1234 (Fla. 3d DCA 2014) (same); *Wingate v. State,* 729 So.2d 492, 493 (Fla. 1st DCA 1999) (same).